UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMIL MUHAMMAD,

                Plaintiff,

-against-                                            3:24-CV-35 (LEK/ML)

RANDALL STURTZ AND
ADAM WAGE,

                Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I.     INTRODUCTION

On January 09, 2024, pro se Plaintiff Jamil Muhammad ("Plaintiff") commenced this action, *in forma pauperis*, against Defendants Judge Daniel Seidan, former Broome County Assistant District Attorney ("ADA") Adam Wage, Binghamton Police Department Officer Randall Sturtz, Binghamton City Court, Broome County District Attorney's Office, and the Binghamton Police Department, alleging, inter alia, violations of 42 U.S.C. § 1983. Dkt. Nos. 1 ("Complaint"), 2. On June 11, 2024, the Honorable Miroslav Lovric, Unted States Magistrate Judge, recommended dismissal of the Complaint, Dkt. No. 9, which this Court adopted, Dkt No. 14. Plaintiff subsequently filed two amended complaints. *See* Dkt. Nos. 12, 13, 13-1 ("Second Amended Complaint" or "SAC"). The SAC became the operative complaint. Dkt. No. 14 at 5. Judge Lovric then recommended that the SAC be accepted for filing to the extent it asserted a malicious prosecution claim against Defendants Officer Sturtz and ADA Wage in their individual capacities, and that all other parties and claims be dismissed without leave to amend, Dkt. No. 16 at 8, which this Court then adopted, Dkt. No. 19.

Defendant Sturtz moved to dismiss Plaintiff's SAC. Dkt. No. 36-1. ("Motion"). Plaintiff

filed a response and simultaneously cross-moved for summary judgment, Dkt. No. 43

("Response"), and Sturtz filed a reply and opposition to Plaintiff's motion for summary

judgment, Dkt. No. 50 ("Reply").

For the reasons that follow, Defendant Sturtz's motion to dismiss is granted and

Plaintiff's summary judgment motion is denied as moot.

## II.    BACKGROUND

The following facts are set forth as alleged in the Complaint, the exhibits attached to it,

and the SAC.

### A.  Plaintiff's Original Complaint

On August 23, 2023, Plaintiff was "falsely charged [with] harassment / Criminal

Instruction [sic.] of Breathing." Compl. at 6.[1] Plaintiff "turned [himself] in" the next day, was

arraigned and placed under an "Order of Protection," although he did "not know[] what [he] was

being arrested for." *Id.* Plaintiff was "finger printed and cuffed by both wrist[s] to a steal [sic]

wall poll" and was in "tremendous pain" due to severe back problems. *See id*.

Plaintiff further alleges that the "false charges" arose from a police report filed by his

wife, Muminah Muhammad, with the Binghamton Police Department. *See* Dkt. No. 1 at 11

("Plaintiff's Affidavit"). He alleges ADA Wage "[a]ttempt[ed] to coach/coerce [his] wife . . . to

maintain criminal proceedings and charges against [him]" after Mrs. Muhammad informed him

that Plaintiff was innocent and explained that she "want[ed] to drop the charges because [her]

husband . . . never physically assaulted [her]." *Id.* Plaintiff's allegation that she was coerced is

---

[1] Citations to Plaintiff's submissions refer to the pagination generated by CM/ECF, the Court's electronic filing system.

based on ADA Wage's "threat[]" to Mrs. Muhammad that if she "drop[ped] the charges against [her] husband, the Judge will bring charges against [her] for making a false statement to the Binghamton Police." *Id.* Additionally, plaintiff avers that ADA Wage and the Binghamton Police were negligent because eleven days passed between when the initial report was filed and when an order of protection was placed on him, there were no threats or harm indicated by his wife during that period, and the police never asked to see bruises or scars on her body. *Id.* at 11–12. Plaintiff also explains that Mrs. Muhammad suffers from a host of health problems, including depression and bipolar disorder; and that, at the time, the police never asked her "if she was under any influence of any alcohol, [d]rugs, [p]rescribed [m]edications," or if she "had a[] history of mental health problems." *Id*. at 11. Plaintiff avers the police and ADA Wage "targeted" his wife because she was a "mental Health Patient." *Id.*

Mrs. Muhammad offered a "Statement of Record," which Plaintiff also attached to this Complaint. *See* Dkt. No. 1 at 14 ("Statement of Record"). In it, she explicitly disavows, "without [d]uress, [t]hreat, [c]oercion, or by force" that her original statement to the Police regarding Plaintiff striking her and choking her "until [he] couldn't breathe." *Id.* at 15. She explains that on September 6, 2023, "after submitting [her] first Statement of Record correcting [her] statement . . . of these false alleged charges against [her] husband," ADA Wage contacted her. *Id.* at 14. She told ADA Wage that her "first initial statement given to the Binghamton Police w[as] not true" and that she was under the influence of alcohol, various medications, and could not remember the situation. *Id.* She states that ADA Wade "attempted to coach her" to maintain the charges against Plaintiff and told her that if she were to drop the charges against her husband, she may be charged with making a false statement. *See id*. She further explained that the "charges and Order of Protection should not be . . . applied to [her] husband because of the untruth [she] stated due to

[her] mental health conditions" and informed the "District Attorney and the Binghamton Police [of these facts] verbally . . . and during and before [Plaintiff's] [a]rraignment." *Id*. at 15.

Along with these statements, Plaintiff also submitted the initial charging documents he received: one for second degree harassment and another for criminal obstruction of breathing. Dkt. No. 1 at 19–22. These documents contain a deposition signed by Officer Sturtz, as to Mrs. Muhammad's initial allegations against Plaintiff. *Id*. at 20–21. Specifically, she stated that during the event in question, during an argument, Plaintiff "burst through the bedroom door and slapped [her] with an open hand to the right side of [her] face." *Id*. Then, "he used both hands to wrap around my neck and he squeezed . . . [and he also said] that he wanted to kill me." *Id*. at 21.

On December 5, 2023, the charges against Plaintiff were dropped. *See* Dkt. No 1. at 17.

### B. Plaintiff's Second Amended Complaint

Plaintiff's SAC generally pleads the same issues, namely that his "[c]onstitutional rights were violated by [ADA] Adam Wage and . . . Officer Sturtz" given the charges of "assault and restrictive strangling." SAC at 1. Plaintiff's SAC avers that he turned himself into the Police, and after reading the charges against him, claimed that he did not slap or choke his wife because he was "sleep[ing] in bed" during the alleged events. *Id*. Plaintiff asked his wife if she remembered writing the report, but she did not. *Id.* He alleges that Sturtz "wrote the complaint in his own handwriting" and "not only fabricated [the] report, but coached [his] wife while he wrote [the] report to bring charges against . . . [Plaintiff]." *Id*.

After Plaintiff was arrested and arraigned, Judge Seidan issued a six month "Court Order of Protection against [Plaintiff]" which led to Plaintiff being "homeless for 2 months and 21 days until the case and charges were dropped/dismissed." *Id.* Throughout this time, Plaintiff alleges he was "pressured to plead guilty by [his] court appointed lawyer, D.A.'s Office, and Judge

Seiden." *Id.* at 3. Plaintiff avers this was "purposely done" and that he was subjected to "continued frivolous court appearances . . . to see if [he] would fold under extreme pressure and plead guilty to the [c]harges" on account of his homelessness. *Id.*

At some point during these events, Plaintiff's wife contacted ADA Wage to claim Plaintiff's innocence and have the charges against him dropped given her lack of memory about the incident and the fact that she suffers from mental health issues. *Id.* at 1. ADA Wage informed Mrs. Muhammad that he believed her story and that by recanting it "she could be charged with making a false report and be charged with a Felony." *Id.* at 1–2. Mrs. Muhammad "maintained [Plaintiff's] innocence." *Id.* at 2. And while the "District Attorneys [sic] Office along with [his] Court Appointed Lawyer pushed [Plaintiff] along with Judge Seiden to plead Guilty," the charges against him were eventually dropped after his wife gave court testimony stating that "the charges against [Plaintiff] were untrue." *Id.*

Liberally construed, Plaintiff brings a sole claim of malicious prosecution against ADA Wage and Officer Sturtz. As to Sturtz, the claim is based on his failure to "appl[y] proper training as to whether or not [his] wife was under the influence of drugs or alcohol or had any mental health issues," and on the belief that Sturtz "coached [his] wife to introduce false evidence and fabricate the police report in his own hand writing." *Id.* at 2. As to ADA Wage, Plaintiff avers that he attempted to continue prosecuting him even after Plaintiff's wife recanted her story, and that ADA Wage threatened his wife with perjury charges if she did not maintain her story. *See id.* at 1–2.

Plaintiff seeks $100,000,000.00 in damages per Defendant. Dkt. No. 13 at 4.

### C.  Service of Process

Through the Court, Plaintiff has attempted to serve the Defendants several times. *See* Dkt. Nos. 23, 29, 32, 60. After Officer Sturtz was properly served, Dkt. No. 29, his attorneys appeared in this case and filed Sturtz's Motion, Dkt. Nos. 33, 34, 35, 36. The Court reissued summons to ADA Wage a third time on October 8, 2025, Dkt. No. 60, and the summons was again returned as unexecuted given that Wage no longer lives at the address Plaintiff provided, Dkt. No. 62.

On November 10, 2025, Judge Lovric directed Plaintiff to "provide to the Clerk a current address for Defendant Adam Wage and the Clerk is directed to re-issue a summons for Defendant Wage and provide the necessary documents to the U.S. Marshals Service to effect personal service on Defendant Adam Wage" no later than December 10, 2025. Dkt. No. 63. Plaintiff failed to comply with that directive.

Finally, on December 19, 2025, this Court informed Plaintiff that if he: 1) did not provide a serviceable address for Adam Wage, or 2) did not show cause for he was unable to provide such an address that his claims against Wage would be dismissed. Dkt. No. 64. Again, Plaintiff failed to comply.

## III.  LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule

12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." *Id.* at 556.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court has stated that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. *Id.* at 679.

Where, as here, a plaintiff proceeds pro se, the court must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002) (cleaned up). Nevertheless, "dismissal of a pro se complaint is…appropriate where a plaintiff has clearly failed to meet the minimum pleading requirements." *Rahman v. Schriro*, 22 F.Supp.3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)). The Court's "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (cleaned up).

When ruling on a Rule 12(b)(6) motion, "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotations omitted).

However, for pro se plaintiffs, the Court *may* consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotations omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010), "factual allegations made by a pro se party in his papers opposing the motion," *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013), and "documents that the plaintiff[ ] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). Finally, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000).

## IV.   DISCUSSION

### A.  Motion to Dismiss

#### 1.   *Officer Sturtz*

Sturtz moves to dismiss Plaintiff's Complaint in its entirety. He argues, *inter alia*, that Plaintiff's claims in the Complaint and SAC are contradictory as to Sturtz's involvement in the instant action and thus warrant dismissal. Mot. at 8–11. Further, Sturtz avers Plaintiff has failed to state a claim for malicious prosecution. Mot. at 11–15. The Court will handle each argument in turn.

##### a.  Plaintiff's inconsistent allegations in the SAC will not be credited as true.

An "amended complaint ordinarily super[s]edes the original[ ] and renders it of no legal effect." *Dluhos v. Floating and Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 68 (2d Cir. 1998) (internal quotes omitted) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128

(2d Cir. 1994)). "However, where allegations in an amended pleading 'directly contradict' pleadings in the original complaint, courts have disregarded the amended pleading.'" *Brooks v. 1st Precinct Police Dep't*, No. 11-CV-6070, 2014 WL 1875037, at *2 (E.D.N.Y. May 9, 2014) (quoting *Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*, No. 08–CV–588, 2012 WL 1638326, at *2 (S.D.N.Y. Sept. 1, 2001)). Generally, courts are "permitted to consider allegations that are contradicted by Plaintiff's original complaint and also the fact that Plaintiff is attempting to manipulate his allegations to avoid dismissal." *Pace v. Cnty. of Cortland*, No. 22-CV-1211, 2023 WL 7324515, at *6 n.2 (N.D.N.Y. Nov. 7, 2023); *see also Colliton v. Cravath, Swaine & Moore LLP*, No. 08-CV-400, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009) (explaining that "[w]here a 'plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint,' a court is authorized "to accept the facts described in the original complaint as true.").

Sturtz avers that Plaintiff's original Complaint and SAC are inconsistent as to the allegations against him. *See* Mot. at 9–11. In the original Complaint, Plaintiff's wife, Mrs. Muhammad, allegedly made the false statements which led to his arrest in August 2023. *Id*. at 9–10. But in the SAC, "Plaintiff [] alleges that he 'believes' Officer Sturtz fabricated the accusations that his wife previously admitted, under oath, to making." *Id*. at 10.

Plaintiff has not rebutted these allegations and has provided no rationale for his inconsistent statements. *See* Resp. at 1–5. Instead, he appears to reallege the facts raised in his SAC. *See, e.g.*, *id*. at 1–2 (explaining that his wife informed Sturtz that she "wish[ed] to correct the record" because she was "never harassed or assaulted by [Plaintiff]" and that Sturtz "hand wrote" the police report while Mrs. Muhammad was "under duress.").

In this Court's view, Plaintiff's wholly new allegation in the SAC contradicts the facts identified in the original Complaint, and specifically the detailed deposition testimony given by Mrs. Muhammad that she suffered harassment by the Plaintiff. *See* Dkt. No. 1 at 20 ("I was trying to speak with [Plaintiff] about my son and some medical testing. [Plaintiff] became upset and refused to speak with me about my son. [Plaintiff] was upset and started yelling at me."); *id.* ("[Plaintiff] continued to yell while I was in the bedroom upset about me asking him questions."); *id.* at 20–21 ("[Plaintiff] burst through the bedroom door and slapped me with an open hand to the right side of my face."); *id.* at 21. ("[Plaintiff] used both hands to wrap around my neck and he squeezed . . . . [He also said] that he wanted to kill me.").

Accordingly, because the facts in the SAC directly contradict the facts pleaded in the original Complaint regarding how the charges against Plaintiff arose, the Court will not credit the new allegation against Sturtz in the SAC as true. *Colliton*, No. 08-CV-400, 2008 WL 4386764, at *6.

### b. Plaintiff fails to state a claim for malicious prosecution.

Sturtz further argues that Plaintiff fails to state a claim for malicious prosecution. Mot. at 11–15. To establish a claim for malicious prosecution under Section 1983, a plaintiff "must plead both a violation of his rights under the Fourth Amendment and the elements of a malicious prosecution claim under state law." *Dettelis v. Sharbaugh*, 919 F.3d 161, 163 (2d Cir. 2019) (internal quotes omitted). Under New York law, a malicious prosecution claim requires: "(1) the initiation or continuation of a criminal proceeding against [the] plaintiff; (2) termination of the proceeding in [the] plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." *Id.* at 163 –64 (quoting

*Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). Sturtz avers that Plaintiff has failed to meet the first, third, and fourth elements of the claim. Mot. at 12–15.

Even assuming Sturtz was personally involved in bringing the alleged false charges against Plaintiff, the dispositive issue is whether Plaintiff has plausibly alleged that the prosecution was initiated or continued without probable cause. *Simmons v. New York City Police Dep't*, 97 F. App'x 341, 342 (2d Cir. 2004); *see also Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) ("[T]he existence of probable cause is a complete defense to a claim of malicious prosecution."). Therefore, the Court will focus the remainder of its analysis on whether the Plaintiff has established a lack of probable cause.

"Probable cause . . . has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). In the context of an arrest, probable cause "requires an officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks omitted). In evaluating whether probable cause is present, a court "must consider those facts available to the officer at the time of the arrest and immediately before it, as *probable cause does not require absolute certainty*." *Id.* (cleaned up) (emphasis added). Further, "[c]ourts should look to the totality of the circumstances" in assessing allegations for lack of probable cause. *Id.* (cleaned up). "[T]he issue . . . is whether probable cause exist[ed] as of the time the judicial proceeding [was] commenced, as opposed to at the time of the arrest." *Fanelli v. City of New York*, No. 13-CV-1423, 2013 WL 6017904, at *4 (S.D.N.Y. Nov. 1, 2013) (cleaned up). A plaintiff can rebut a finding of probable cause by showing "that the conduct of the police deviated so egregiously from acceptable police

activity as to demonstrate an intentional or reckless disregard for proper procedures.'" *Hill v. Melvin*, No. 05-CV-6645, 2006 WL 1749520, *13 (S.D.N.Y. June 27, 2006) (quotation omitted). Alternatively, "'the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.'" *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)).

Liberally construed, the core of Plaintiff's malicious prosecution claim against Sturtz is that the charges filed against him were false and that he believes Officer Sturtz "fabricated" those charges "in his own handwriting." *See* SAC at 1. However, as stated *supra* Part IV A(1)(a), this allegation will not be credited as true given the inconsistencies between the SAC and Plaintiff's original filing, as well as the fact that Plaintiff has not alleged Officer Sturtz had any reason to fabricate charges against him.[2] *Compare* SAC at 1–3 *with* Compl. at 15–21.

Moreover, Mrs. Muhammad provided Officer Sturtz a detailed accounting of an alleged domestic violence incident in which she identified Plaintiff as the perpetrator and filed a police report. *See* Compl. at 11, 20–21. That sworn statement, "written on behalf of Muminah Muhammad," supplied probable cause to arrest Plaintiff. *See* Dkt. No. 43-3 at 1; *see also Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the

---

[2] Plaintiff seems to also aver that race was "a determining factor in violation" of his civil rights, and that the police had reason to arrest him to maintain their "arrest quotas." Resp. at 2. This claim sounds in a violation under 42 U.S.C. § 1985(3). However, claims arising under this statute must be pled, "with at least some degree of particularity, overt acts which the defendants engaged in which were reasonable related to the promotion of the claimed conspiracy." *Simpson ex rel. Simpson v. Uniondale Union Free School Dist.,* 702 F.Supp.2d 122, 133 (E.D.N.Y. 2010) (internal quotations and citations omitted). Plaintiff's allegations are conclusory in this regard and therefore the Court need not consider them. *See Carter v. City of Albany*, No. 106-CV-461, 2007 WL 913923, at *5 (N.D.N.Y. Mar. 23, 2007) (dismissing Plaintiff's 1985 claim because "[P]laintiff has presented no factual allegations in his complaint that any other defendant was . . . motivated to harm him because of race.")

person's veracity.")[3] And Mrs. Muhammad's later recantation, *see* Dkt. No. 43-2, does not retroactively eliminate probable cause. *See Savarese v. City of New York*, 547 F. Supp. 3d 305, 331 (S.D.N.Y. 2021) (explaining that exculpatory information "does not retroactively make the initial arrest unlawful."); *see also Guerrero v. City of Yonkers*, No. 18-CV-5353, 2023 WL 6141604, at *7 (E.D.N.Y. Sept. 20, 2023) ("[C]ourts in this Circuit have repeatedly recognized the pressure on domestic violence victims to recant and protest their attacker's innocence and the unreliability of those recantations.") (cleaned up). Thus, if the police report filed against Plaintiff was false, Compl. at 11, 20–21, he may find a remedy in defamation law against Mrs. Muhammad, but a malicious prosecution claim against Officer Sturtz is inappropriate.

Accordingly, Plaintiff's malicious prosecution charge against Officer Sturtz is dismissed.

### 2. *ADA Wage*

As explained *supra* Part II C, Plaintiff has failed to provide this Court with a serviceable address for Wage and Wage has not appeared in the instant action. *See* Dkt. No. 63.

Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court

---

[3] Plaintiff avers that Officer Sturtz was negligent in his "legal duty to serve, protect, and enforce laws" by "never appl[ying] proper training as to wether [sic] or not [his] wife was under the influence of drugs or alcohol or had any mental health issue" at the time when her statement was taken. *See* Resp. at 1–2, 4; SAC at 2. Plaintiff has not alleged facts which would suggest Officer Sturtz would know of Mrs. Muhammad's alleged ailments or that she was under the use of prescription drugs or "heavy alcohol." *See* Resp. at 2. Moreover, Plaintiff does not cite, and the Court has not found, any duty Police Officers have to investigate all plausible manners of Plaintiff's innocence. *See Curley*, 268 F.3d 65 at 70. To the extent Plaintiff alleges Officer Sturtz's actions were "negligent acts by government officials" with "no evidence of malice or intent to harm [P]laintiff," "his malicious prosecution claim fails." *Watson v. United States*, 865 F.3d 123, 134 (2d Cir. 2017).

must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); *see also*

*O'Brien v. Rushmore Loan Mgmt. Servs., LLC*, No. 23-CV-1369, 2025 WL 964813, at *10 (D.

Conn. Mar. 31, 2025) (explaining that courts may sua sponte dismiss complaints for insufficient

service of process as Plaintiff receives notice and does not "show[ ] good cause for the failure.")

(citing Fed. R. Civ. P. 4(m)). Importantly, it is the Plaintiff's burden to show that good cause

exists. *Carroll v. Certified Moving & Storage*, Co., LLC, No. 04-CV-4446, 2005 WL 1711184,

at *2 (E.D.N.Y. July 19, 2005) (citing Fed. R. Civ. P. 4(m)). And good cause "is generally found

only in exceptional circumstances where the plaintiff's failure to serve process in a timely

manner was the result of circumstances beyond its control*." S. Bay Sailing Ctr., Inc. v. Standard

Fire Ins. Co.*, No. 15-CV-6183, 2017 WL 913625, at *9 (E.D.N.Y. Jan. 17, 2017), *report and

recommendation adopted*, No. 15-CV-6183, 2017 WL 912042 (E.D.N.Y. Mar. 7, 2017) (quoting

*Beauvoir v. U.S. Secret Serv.*, 234 F.R.D. 55, 56 (E.D.N.Y. 2006)).

The instant action was filed on January 9, 2024. Dkt. No. 1. After several attempts to

serve ADA Wage, *supra* Part II C, the Court warned Plaintiff that failure to timely and properly

serve Wage would result in dismissal of his claims, *see* Dkt No. 64. Plaintiff has failed to provide

the Court with the location of a serviceable address for ADA Wage, and he has not shown any

cause for why he has been unable to provide such an address. Accordingly, the action against

Wage is dismissed pursuant to Fed. R. Civ. P. 4(m).

### B.  Plaintiff's Cross-Motion for Summary Judgment

Because the Court is dismissing Plaintiff's SAC, the Court will deny Plaintiff's cross-

motion for summary judgment as moot.

### V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant Sturtz's motion to dismiss, Dkt. No. 36-1, is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's complaint, Dkt. No. 1, against Defendant Wage is **DISMISSED** for insufficient service of process; and it is further

**ORDERED**, that Plaintiff's second amended complaint, Dkt. No. 13, is **DISMISSED without prejudice**; and it is further

**ORDERED**, that Plaintiff's cross-motion for summary judgment, Dkt. No. 43, is **DENIED as moot**; and it is further

**ORDERED**, that if Plaintiffs wish to proceed with this action, they must file an amended complaint as set forth above within Forty-Five (45) days from the date of the filing of this Memorandum-Decision and Order. If Plaintiffs timely file an amended complaint, this matter shall be returned to the Court for further review; and it is further

**ORDERED** that, if Plaintiffs fail to timely file an amended complaint, the Clerk shall dismiss this action and close this case without further order from the Court; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      January 22, 2026
            Albany, New York

LAWRENCE E. KAHN
United States District Judge

15